UNITED STATES of America, Appellee,

v.

Elbert L. STURDIVANT, Defendant–Appellant.

Docket No. 00–1058.

United States Court of Appeals, Second Circuit.

Argued: Sept. 5, 2000.

Decided: March 19, 2001.

Edward S. Zas, The Legal Aid Society, Federal Defender Division, New York, NY, for defendant-appellant.

William J. Knapp, Assistant United States Attorney for the Western District of New York, for Denise E. O'Donnell, United States Attorney for the Western District of New York, Buffalo, NY, for appellee.

Before: CALABRESI and
SOTOMAYOR, Circuit Judges, and
TRAGER,* District Judge.

SOTOMAYOR, Circuit Judge:

Defendant-appellant Elbert L. Sturdivant appeals from a judgment entered on January 27, 2000 by the United States District Court for the Western District of New York (Skretny, *J.*) convicting him after a jury trial of one count of possessing and distributing cocaine base. The court imposed a sentence of 63 months' imprisonment.

Defendant claims that he suffered prejudice by being convicted and sentenced based upon a count that was duplicitous, *i.e.*, a single count in the indictment that charged him with participating in two separate and distinct drug transactions. This duplicity allegedly resulted in, among other things, uncertainty as to whether the jury's general verdict represented a unanimous finding that defendant was guilty based on participation in both drug transactions or just one. The jury, in fact, had been specifically instructed that it could convict on the charged count based on either finding. Defendant argues that he was harmed by this uncertainty because the district court at sentencing failed to recognize the possibility that he had been found guilty based on participation in only one transaction, and instead assumed that he had been convicted of possessing and distributing the aggregate drug quantity involved in both.

In response, the government contends that defendant has waived his duplicity argument by not asserting it prior to trial, and argues alternatively that the two transactions were related conduct that the judge could properly take into account in sentencing defendant under the United States Sentencing Guidelines (the "Guidelines"). *See* U.S.S.G. § 1B1.3 (1998).

We agree with defendant that his duplicity argument was not waived, and, in any event, we find that his claims with respect to the sentencing issue rise to the level of plain error. However, any prejudice to defendant resulting from the duplicity of the count of conviction can be avoided simply by resentencing defendant under the assumption that he was convicted only on the transaction involving the lesser drug amount and was acquitted on the other transaction. Thus, we affirm defendant's conviction, vacate his sentence, and remand for resentencing consistent with this opinion.

## BACKGROUND

Defendant's indictment resulted from a federal investigation into the sale of crack cocaine in the Niagara Falls area of New York. As part of this effort, the Federal Bureau of Investigation ("FBI") obtained the assistance of an individual named William O'Neill, who claimed that he had come into contact with defendant during the course of his own drug use. The facts underlying defendant's indictment involve two transactions on the same day in which the defendant allegedly sold crack cocaine to O'Neill.

According to the testimony of government witnesses and other evidence presented by the government at trial, O'Neill telephoned defendant on February 9, 1997 at approximately 3 p.m. and arranged to meet him at a local car wash to purchase crack cocaine (the "Afternoon Transaction"). At the car wash, defendant supplied O'Neill with 3.4 grams of crack cocaine in exchange for $300. O'Neill also returned a small portion of the drugs to defendant as an additional "payment."[1]

---

* The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.
1. An FBI agent testified at trial that the return of a small portion of the drugs to defendant reflected a practice known as "middling." According to the agent, an individual middling a drug transaction serves as a "runner" between the drug supplier and the ultimate purchaser and, as payment, receives a small portion of the drugs to supply his or her own drug habit.

O'Neill then drove around the block and handed his purchase over to FBI agents. The agents monitored the entire transaction and recorded it on audio and video cassettes.

Later that day, O'Neill agreed to attempt another crack cocaine purchase from a different seller named Anthony Pascuzzi (the "Evening Transaction"). O'Neill telephoned Pascuzzi and arranged to meet at Pascuzzi's home. After O'Neill arrived and gave Pascuzzi $300, Pascuzzi left to retrieve the crack cocaine. He returned about twenty minutes later unexpectedly accompanied by defendant, at which time O'Neill received 2.8 grams of crack cocaine. O'Neill later testified that it was defendant who handed him the crack cocaine during the transaction, although the defense provided evidence that, immediately after the transaction, O'Neill had told the FBI that Pascuzzi had been the one providing him the drugs during the transaction. O'Neill testified that he gave both Pascuzzi and defendant twenty dollars for their assistance in providing him with the drugs, and might also have given a portion of the crack cocaine to defendant as he had done in the Afternoon Transaction.[2] FBI agents recorded this transaction on audio tape but not video-tape.

Based on these two transactions, on September 8, 1998, defendant was charged with one count of conspiracy "to possess with intent to distribute, and to distribute, 5 grams or more of a substance containing cocaine base, 'crack,'" in violation of 21 U.S.C. § 846 (Count I) and one count of possession with intent to distribute, and distribution of, five grams or more of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting) (Count II). Count II also cited to 21 U.S.C. § 841(b)(1)(B), which contains a mandatory statutory sentencing range of five to

forty years for drug violations involving five grams or more of a substance containing cocaine base.

At the close of the government's case, defendant moved under Fed.R.Crim.P. 29 for a judgment of acquittal on both counts of the indictment. Defendant argued that Count I, the conspiracy count, should be dismissed because there was insufficient evidence to establish the existence of the conspiracy charged. The court agreed and dismissed Count I, holding that:

> With respect to that [afternoon] transaction that I will term number one, the record, even viewing it in the light most favorable to the government, does not establish a link to transaction number two such that transaction number one and transaction number two would be one conspiracy as the government has argued.

The court also found that Count I could not be interpreted as encompassing a claim that each transaction involved its own separate conspiracy without running into duplicity problems, because Count I only charged the existence of one conspiracy.

Defendant argued that Count II should be dismissed because it was duplicitous, *i.e.*, that the count actually included within its scope two distinct drug transactions not connected by any overarching conspiracy. As an alternative to dismissal, defendant asked the court to order the government to submit only one of the transactions to the jury and drop the other one. The court refused to grant the relief requested by defendant and instead held that a jury charge on unanimity would be sufficient to protect against the dangers posed by Count II's duplicity.

The court thus charged the jury:

> In order to convict the defendant on Count 2, the only charge you have before you, all twelve of you must agree on

**2.** O'Neill could not recall whether he had, in fact, returned a portion of the drugs to defen-     dant.

the specific transaction the defendant committed in violation of the law. All of you must agree that the defendant illegally engaged in the afternoon transaction, or all of you must agree the defendant illegally engaged in the evening transaction, or all of you must agree the defendant illegally engaged in both transactions.

The judge also instructed the jury that drug quantity was not an element of the offense. The court did not order the jury to make any special findings regarding defendant's guilt with respect to each transaction, nor did the parties request a special verdict.

On August 6, 1999, the jury returned a general verdict of guilty on Count II. The court sentenced defendant on January 11, 2000 in reliance on the recommendations in the Presentence Investigation Report ("PSR") prepared by the Probation Office. The PSR had concluded that defendant's offense involved 6.2 grams of crack cocaine triggering a mandatory minimum prison term of five years (60 months) pursuant to 21 U.S.C. § 841(b)(1)(B). The PSR had also calculated defendant's sentence under the Guidelines to be 63–78 months' imprisonment based on an offense level of 26 (using the aggregate quantity of 6.2 grams involved in the two transactions) and a Criminal History Category of I. The PSR did not mention anything concerning the existence of a relationship between the two transactions or otherwise mention the concept of relevant conduct.

At the sentencing proceeding, the court noted that defendant had withdrawn a request, pursuant to the "safety valve" provided by 18 U.S.C. § 3553(f) and § 5C1.2 of the Guidelines, that his sentence not be constrained by the statutory minimum sentence of five years contained in 21 U.S.C.

§ 841(b)(1)(B). The court denied defendant's request for downward adjustments for acceptance of responsibility and for his allegedly minor role in the offense, and imposed the lowest possible sentence within the Guideline range recommended in the PSR—63 months. The judge made no finding or mention of the existence of a relevant connection between the two transactions for sentencing purposes. This appeal followed.

## DISCUSSION

■ An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed.R.Crim.P. 8(a)'s requirement that there be "a separate count for each offense," and 2) the defendant is prejudiced thereby. *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980) (holding defendant must demonstrate prejudice in order to invoke duplicity doctrine because the doctrine is "more than an exercise of mere formalism"); *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981) (same). The relevant policy considerations guiding a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment include:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Margiotta*, 646 F.2d at 733; *see also Murray*, 618 F.2d at 896 (same).[3]

> *Murray*, 618 F.2d at 897–98 ("[B]ecause th[e] policy considerations are not thwarted here, we conclude that the indictment was not duplicitous even though it charged a violation of two statutes in one count"). However, we will employ what appears to be the far more common and, we believe, accurate practice of

**3.** We note that, as a matter of terminology, the cases in this Circuit have not been completely consistent in their use of the term "duplicitous," with at least one case suggesting that an indictment should be labeled "duplicitous" only where it actually causes unavoidable prejudice to the defendant. *See*

Defendant asserts that the prejudice to him from his duplicitous indictment implicates all of the above-listed policy considerations, requiring vacatur of the judgment of conviction and sentence. The government disagrees, claiming that the only potential harm was the possibility of a non-unanimous verdict with respect to individual transactions and that this harm was avoided by the district court's unanimity instruction to the jury. The government adds that, in any event, the defendant waived any duplicity challenge by not objecting to the indictment prior to trial. We address the threshold waiver argument first, before turning to defendant's claim of duplicity-related harms.

A. *Waiver*

■ The government contends that defendant's duplicity argument has been waived because, as a general rule, such objections must be made before trial. *See Murray*, 618 F.2d at 899 n. 8 ("Under Fed.R.Crim.P. 12(b)(2), objections based on defects in the indictment must be raised prior to trial."); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.1979) ("Since the alleged duplicitous character of the counts *appears on the face of the indictment*, appellants could have moved before trial to dismiss the indictment.") (emphasis added). However, this is not true if it is not until the proceeding is underway and the government's evidence is presented that a court can reach the conclusion that an indictment is impermissibly duplicitous. *See Davis v. United States*, 411 U.S. 233, 241, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) ("The waiver provisions of Rule 12(b)(2) are operative only with respect to claims of defects in the institution of criminal proceedings."); *United States v. Walsh*, 194 F.3d 37, 46 (2d Cir.1999) ("We may consid-

er the record as a whole in determining whether an indictment is in fact multiplicitous or duplicitous."). Thus, we will not find a defendant has waived a duplicity argument where the claimed defect in the indictment was not apparent on its face at the institution of the proceeding.

■ Here, at the outset of the proceeding, Count II of the indictment appeared to fall within an exception to the rule prohibiting the inclusion of two crimes in the same count of an indictment. Specifically, we have held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989). Count I of the original two-count indictment charged the existence of a conspiracy to commit the acts charged in Count II. Taking the conspiracy and substantive counts together, the indictment, as seen prior to trial, could reasonably have been interpreted to charge that the two transactions included in Count II were part of a single continuing scheme and thus were properly included in one count. *See Tutino*, 883 F.2d at 1141 (holding that, based on finding that defendants had engaged in drug conspiracy, government could properly include two sales of heroin made in furtherance of that conspiracy within one count of indictment and could aggregate amounts of drugs involved in both transactions to meet statutory thresholds for certain mandatory minimum and maximum sentences). Only after the court dismissed the conspiracy count at the close of the government's case did Count II take on a potentially impermissible duplicitous character, and it is exactly at that time that defense counsel made a duplicity objection.[4]

defining an indictment as duplicitous simply "if it joins two or more distinct crimes in a single count," *see United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992), and refer to duplicity that causes prejudice to the defendant as "impermissible duplicity." *See, e.g., Margiotta*, 646 F.2d at 733 ("The identifica-

tion of these [policy] considerations suggests that a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses.")

4. We also note that no waiver results from the fact that defendant did not request a special

■ At sentencing, as will be discussed further below, it appears from the record that everyone involved—the judge, the government, and defense counsel—erroneously assumed that defendant had been convicted based on both transactions. However, defense counsel's failure to recognize and object to this error is immaterial.[5] To the extent that the court sentenced defendant on the assumption that he was convicted for conduct for which the jury may not have reached a unanimous verdict, such sentence constitutes plain error reviewable on appeal even absent timely objection. *See* Fed.R.Crim.P. 52(b); *United States v. Darmand,* 3 F.3d 1578, 1581 (2d Cir.1993) (although issue raised for the first time on appeal, court remands for resentencing because "it appears that the district court, with the acquiescence of the parties, adopted the analysis of the pre-sentence report" in treating alleged earlier drug transaction as convicted conduct rather than making relevant conduct finding.)

### B. *Potential Grounds of Prejudice to Defendant*

#### 1. *Notice*

■ Defendant claims that the duplicity of the indictment resulted in a lack of notice that the government was charging him with participating in both the Afternoon and Evening Transactions. We disagree. Among the many items from which defendant's awareness of the true nature of the charges against him may be deduced are the language of both the conspiracy and substantive counts of the indictment stating that defendant's violation arose from conduct on February 9, 1997 involving "5 grams or more" of crack cocaine, the government's statement in its

pre-trial memorandum filed on May 20, 1999 that it intended to prove defendant's participation in two transactions and the government's filing of an exhibit list on the same date listing two "Reports of drug property" corresponding to separate drug seizures of 3.4 grams and 2.8 grams.

#### 2. *Double Jeopardy*

■ The Supreme Court has held that retrial of a case ending in a hung jury is not barred by the Double Jeopardy Clause of the United States Constitution. *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Defendant claims that because he has no way to prove that the jury did not hang on the issue of his guilt with respect to one of the two transactions, he remains subject to reprosecution for one transaction even if the jury, in fact, unanimously acquitted him on one transaction and found him guilty on the other.

We hold, however, that the government would be estopped from asserting, for double jeopardy purposes, that the jury's general verdict was not a final resolution of both crimes charged in Count II. Principles of equity prohibit the government from benefitting from the prejudicial ambiguity that the government alone was responsible for creating. It was the government which submitted the duplicitous indictment to the jury, and which decided not to seek a special verdict. By these actions, the government has effectively conceded that the indictment is not impermissibly duplicitous, *i.e.,* that the defendant will not be prejudiced by the harms caused by duplicity, including the harm arising from a jury verdict that does not definitively communicate the jury's findings with respect to the two crimes charged in Count II. For double

---

verdict on the duplicitous count because "it is 'the government's responsibility to seek special verdicts.' " *United States v. Barnes,* 158 F.3d 662, 672 (2d Cir.1998) (quoting *United States v. Orozco–Prada,* 732 F.2d 1076, 1084 (2d Cir.1984)).

**5.** While defense counsel did raise and then withdraw a request that the two transactions be treated separately, the record is clear that this request was not one based upon the alleged duplicity of the indictment but rather sought only an alternate application of the Guidelines.

jeopardy purposes, therefore, defendant is not prejudiced by the duplicitous indictment because the government is estopped from acting on any interpretation of the jury's verdict that would prejudice defendant's double jeopardy rights. *Cf. Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir.1997) (holding that estoppel "prevents a party who secured a judgment in his favor by virtue of assuming a given position in a prior legal proceeding from assuming an inconsistent position in a later action"); *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir.1997) ("The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.").

### 3. *The Uncertainty of the Verdict and Sentencing Implications*

While defendant has not demonstrated prejudice based on a lack of notice or double jeopardy concerns, defendant would be harmed by a sentence based on the assumption that the jury convicted him for participation in both the Afternoon Transaction and the Evening Transaction. Such a sentence would not properly take into account "the uncertainty of whether a general verdict of guilty conceal[ed] a finding of guilty as to one crime and a finding of not guilty as to another." *See Margiotta*, 646 F.2d at 733. The government itself concedes the existence of this uncertainty inherent in the verdict, agreeing that "we may not know which one (or if both) of the transactions the jury agreed upon unanimously."

Notwithstanding this uncertainty, it appears that the district court treated defendant as if he had been convicted of both crimes charged in the duplicitous indictment. This is evidenced by, among other things, the district court's express reliance upon the PSR, which listed under the "Sentencing Options" the applicability of the mandatory statutory sentencing range for offenses involving five or more grams of crack cocaine. *See* 18 U.S.C.

§ 841(b)(1)(B). This mandatory minimum would only be applicable if defendant had been *convicted* based on participation in both the Afternoon Transaction involving 3.4 grams and the Evening Transaction involving 2.8 grams. *See Darmand*, 3 F.3d at 1581 ("Unlike the Guidelines, which require a sentencing court to consider similar conduct in setting a sentence, the statutory mandatory minimum sentences of 21 U.S.C. § 841(b)(1) apply only to the conduct which actually resulted in a conviction under the statute."). The discussion by the parties and the court during the sentencing phase of the trial of defendant's "safety valve" request, a request that seeks to avoid the effect of applying a statutory minimum sentence to a court's calculations under the Guidelines, *see* U.S.S.G. § 5C1.2, provides similar evidence that the court and the parties assumed a conviction based on both transactions that triggered the statutory minimum sentence.

In addition, neither the district court nor the PSR suggested that one of the transactions might constitute "relevant conduct" with respect to sentencing based on the other transaction, which would have justified aggregating the drug amounts from the Afternoon and Evening Transactions under the Guidelines. *See* U.S.S.G. § 1B1.3. In fact, the only specific decision that the district court appears to have made about the relationship between the two transactions is that there was *not* a sufficient link between them to sustain a conviction on the charge of conspiracy in Count I.

In *Darmand*, this Court addressed a similar situation in which it appeared that the district court had, in imposing a sentence, incorrectly treated the defendant's prior conduct as conduct for which he had been convicted. Specifically, we noted that

> our review of the sentencing proceedings ... indicates that the district court may have assumed that U.S.S.G. § 3D1.2(d) (grouping rules for convic-

tions) rather than U.S.S.G. § 1B1.3(a)(2) (relevant conduct) applied to this case. In particular, it appears that the district court, with the acquiescence of the parties, adopted the analysis of the presentence report on this issue.

*Darmand,* 3 F.3d at 1581. We rejected the government's argument, also made here, that the district court's decision to include drugs from an earlier incident in its sentencing calculations should be deemed to reflect an implicit relevant conduct analysis, and remanded for the court to consider the relevant conduct issue and resentence accordingly. *Id.* at 1581, 1583. Although a finding of relevant conduct on remand would have allowed the district court to impose a sentence of the same duration, we emphasized that the initial failure to make such a finding was not immaterial:

> The difference is significant because, while both sections [of the Guidelines cited above] require the addition of quantities of drugs involved in separate offenses to determine the offense level, they do so in different contexts and use different standards....
>
> ... Section 1B1.3 ... may deal with conduct which has not led to a conviction or otherwise been established beyond a reasonable doubt....
>
> We think the Sentencing Commission could reasonably conclude that not all such conduct is relevant.

*Id.* at 1582. Absent a remedy, defendant here would be similarly harmed by the duplicity of Count II of the indictment.

## C. *Remedy*

█ Having found the threat of prejudice to the defendant due to the duplicity of Count II of the indictment, the next question is whether the entire judgment must be vacated. Duplicity does not necessarily require dismissal of an indictment. *See United States v. Goodman,* 285 F.2d

378 (5th Cir.1960) ("The entire count should not be dismissed when a less drastic ruling will suffice."); 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 145 (3d ed. 1999) (citing cases). Courts have utilized other remedies when presented with the threat of impermissible duplicity that vary according to the particular harm or harms to be avoided and the stage of the proceeding at which the threatened harm or harms arise.

Thus, courts have held that prior to a defendant's conviction, prejudice to the defendant can be avoided by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count, *see, e.g., United States v. Aguilar,* 756 F.2d 1418, 1422–24 (9th Cir. 1985); *Thomas v. United States,* 418 F.2d 567, 568 (5th Cir.1969); *United States v. Kearney,* 444 F.Supp. 1290, 1295 (S.D.N.Y. 1978); *cf. United States v. Gibson,* 310 F.2d 79, 80 n. 1 (2d Cir.1962) (holding that government avoided committing prejudicial error despite having included two statutory offenses in one count of indictment because government "did not offer evidence as to the violation of [one of the] statute[s], and the trial court did not convict on that basis"), *disapproved on other grounds, Leary v. United States,* 395 U.S. 6, 53 n. 116, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), or by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction, *see, e.g., Murray,* 618 F.2d at 898; *cf. Abney v. United States,* 431 U.S. 651, 664–65, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding that guilty verdict rendered on duplicitous indictment did not preclude, on double jeopardy grounds, the court of appeals from ordering a retrial based on evidentiary error; court's instruction to jury that it had to unanimously find all elements of both crimes charged in count eliminated possibility that jury had acquitted defendant of one of those crimes).[6]

---

**6.** Although in *Abney,* the Third Circuit had not actually ruled on the question of whether the

indictment was impermissibly duplicitous, it ordered that the government elect one of the

■ Where, as here, a defendant has already been convicted on a count charging two distinct offenses, and the jury's verdict is only demonstrably unanimous with respect to one of those offenses, a court can avoid prejudice to the defendant by sentencing him based upon a conviction for only one offense, *see, e.g., Aguilar,* 756 F.2d at 1425, as long as that one offense does not carry a higher penalty than the other, *see, e.g., Murray,* 618 F.2d at 897–98. In *Aguilar,* the Ninth Circuit remanded a defendant's case for resentencing because it was unable to ascertain whether he had been sentenced as if convicted on both offenses in a duplicitous indictment. *Id.* at 1424. The Ninth Circuit reminded the district court that the proper offense of conviction was the one the government had elected to proceed with when ordered by the court to choose at the start of the trial. *Id.* at 1425. In *Murray,* this Court declined to reverse convictions based on a count charging several defendants with a criminal conspiracy violating two different statutes, because no prejudice to the defendants had been demonstrated. More specifically, we found that there was no lack of notice to the defendants, no double jeopardy issues, and no danger of a non-unanimous verdict, and that while the jury's verdict did "not reveal whether the jury found appellants guilty of violating only one statute or both," the defendants "were not prejudiced; they were sentenced as if they had violated only one of the statutes, each of which . . . carries the same penalties." *Murray,* 618 F.2d at 898.

Our analysis in *Murray* is directly applicable to the present case. As in *Murray,* there is no danger here of prejudice in connection with a lack of notice or double jeopardy rights. Nor is there a threat of a completely non-unanimous verdict that would undermine the validity of defendant's conviction, to the extent such conviction is premised on defendant's participation in only one of the two transactions, because we may assume that the jury followed the court's unanimity instruction. *See Abney,* 431 U.S. at 655, 97 S.Ct. 2034 (holding with respect to unanimity instruction that "[w]e cannot assume that the jury disregarded these clear and unambiguous instructions"). Rather, the verdict simply suffers from a defect similar to that of the verdict in *Murray:* it does not reveal whether the jury found defendant guilty based on his participation in only the Afternoon Transaction, only the Evening Transaction, or both. Therefore, prejudice to the defendant can be avoided by sentencing him as if he had been convicted of the charged crime involving the lesser drug amount and, consequently, the lesser penalty.

## D. *Resentencing*

The district court must give defendant the benefit of the verdict's ambiguity and sentence him assuming that he was convicted of the transaction involving the lower drug quantity—the Evening Transaction—and acquitted him of the transaction involving the higher drug quantity—the Afternoon Transaction. As discussed above, because the offense of conviction on remand will involve less than five grams of crack cocaine, the district court is not constrained in resentencing defendant by the mandatory sentencing range of five to forty years set forth in 18 U.S.C. § 841(b)(1)(B) for convictions involving five grams or more of crack cocaine. *See Darmand,* 3 F.3d at 1581. The district court is otherwise free to make any determinations, adjustments or departures that are permissible under the Guidelines, including whether the conduct for which defendant will be deemed to have been acquitted nevertheless constitutes relevant conduct for sentencing purposes under the Guidelines. *See United States v. Concepcion,* 983 F.2d 369, 387–89 (2d Cir.1992).

two crimes charged in the duplicitous count for the purposes of the retrial. The Supreme

Court made no comment on the merits of this order. 431 U.S. at 664–65, 97 S.Ct. 2034.

## CONCLUSION

The judgment of conviction is affirmed, but defendant's sentence is vacated. We remand for resentencing in a manner consistent with this opinion.